IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Faith Lampley, | ) | C/A. No. 4:03-3611-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Metropolitan Life Insurance Co. and | ) | |
| Georgia Pacific Corp., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this case, the parties have agreed that the plaintiff seeks Long Term Disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) under an employee welfare benefit plan, the Georgia Pacific Corporation Life Choice Long-Term Disability Plan pursuant to plaintiff's employment with Georgia Pacific Corporation. Additionally, plaintiff seeks an award of attorney's fees. Defendant contends plaintiff is not entitled to the relief sought.

**Procedural Background**

This matter is before the Court pursuant to the parties' Joint Stipulation, wherein it was agreed that the Court may dispose of this matter based upon the Joint Stipulation, the administrative record, the plan documents, and each parties' memorandum in support of judgment.[1] The Complaint in this case was originally filed in the Court of Common Pleas for the Fourth Judicial Circuit in Darlington

---

[1] The Fourth Circuit has recognized that there is no prohibition against the parties agreeing to do away with the summary judgment standard and simply allowing the court to dispose of a matter on its' merits by way of stipulation. See *Bynum v. CIGNA HealthCare of North Carolina, Inc.*, 287 F.3d 305 (4th Cir. 2002), footnote 14, where the court stated:
> "While the parties' agreement to waive the summary judgment standards and submit their case to the district court on its merits seems to be unique, the ERISA statute does not preclude such an agreement. *See also Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 374, 377 (4th Cir. 2000) (affirming decision of district court after bench trial where parties agreed for court to decide ERISA claim on merits and doing away with summary judgment standard.)."

1

County, South Carolina, as an action under the Employee Retirement Income Security Act of 1975, 29 U.S.C. § 1001, *et seq*. ("ERISA"). The case was properly removed to this Court on November 17, 2003. Defendants timely answered the Complaint, denying the material allegations therein and raising several affirmative defenses. The plaintiff seeks an order of the Court requiring the defendants to pay Long Term Disability ("LTD") benefits under a group LTD insurance plan provided to defendant Georgia Pacific Corporation by defendant Metropolitan Life Insurance Co.

**Factual and Procedural History**

The plaintiff was employed at the Georgia Pacific Dixie Cup plant in Darlington, South Carolina, as an audit processor. On March 11, 2002, plaintiff made a claim for LTD benefits contending that she was unable to return to her job due to lower back and left side abdominal pain. (A.R. 218.) In support of her claim, a number of medical records were provided to Metropolitan Life.

Plaintiff's work involved checking, testing, and inspecting the production of paper cups as compared with numerical or fixed standards, including visual cup inspection, leak testing, brim diameter and thickness, and inspecting and re-packing quality product, as well as disposal of defective product, picking up and disposing of rubbish, keeping a clean work area, and clean and properly functioning equipment. (A.R. 279-280.) Physically, the job required continuous standing, walking, bending, pushing- pulling and carrying, and intermittent lifting-lowering of loads ranging up to thirty (30) pounds in weight. (A.R. 283.)

The Social Security Administration found the plaintiff to be disabled beginning March 1, 2002. Her Social Security Disability benefits began in August of 2002. (A.R. 51.) Records from Dr. Edward L. Hay of Hand Surgery Associates from June of 1985 indicate that an injury to the plaintiff's hand had resulted in a 40% permanent impairment of her right hand. (A.R. 155.)

Plaintiff's primary physician, Dr. Thomas Hokanson, submitted an Attending Physician Statement competed on March 13, 2002, stating that plaintiff had back and bilateral leg pain, but indicated that she could return to work on March 18, 2002. (A.R. 218.) Dr. Hokanson later submitted three (3) additional Attending Physician Statements: a May 10, 2002 statement (A.R. 215-217) and a May 21, 2002, statement (A.R. 211) both indicating he had not advised plaintiff to return to work because she was under treatment and a June 26, 2002, statement (A.R. 210-211) indicating the plaintiff could not return to work and that he could not report until he learned the result of his referral of the plaintiff to the pain management center.

The Attending Physician Statement completed by Dr. Hokanson on March 13, 2002, indicated that the plaintiff could return to work on March 18, 2002. (A.R. 218-220.) He indicated that plaintiff could sit, stand, and walk eight (8) hours a day intermittently and work a total of eight (8) to twelve (12) hours a day. (A.R. 219.) Plaintiff could climb, twist/bend/stoop, reach above shoulder level, and operate a motor vehicle. (A.R. 219.) Additionally, plaintiff could lift up to ten (10) pounds frequently and eleven (11) to twenty (20) pounds occasionally. (A.R. 219.) However, she could never lift more than twenty (20) pounds. (A.R. 219.)

Dr. Hokanson ordered an MRI on the plaintiff that was performed on in April of 2002. (A.R. 236.) That MRI of the plaintiff's lumbar spine showed "degenerative disc changes at L4-5 and L6-S1." (A.R. 236.) Additionally, she had a moderately bulging disc at L3-4 with narrowing on the neural foramine bilaterally, and "[a]t the level of L4-5 there is a bulging disc which encroaches posteriorly on the nerve root on the left side as it courses into the neural foramine." (A.R. 236.)

Dr. Hokanson also ordered a lower extremity venous duplex study, which was completed on April 8, 2002. (A.R. 235.) The neurologist who performed that study, Dr. Ronald Skinner, III,

3

concluded: "There is evidence of chronic deep venous thrombosis changes involving the superficial femoral vein on the right side. It appears that the vein has been recanilized. No evidence of acute deep venous therombosis is seen." (A.R. 235.) Dr. Hokansons's records reveal that the plaintiff was suffering from SI joint inflammation, which caused a periformis spasm, and did not respond to physical therapy. (A.R. 232.)

Dr. Hokanson's May 10, 2002 Attending Physician Statement stated: "Pt. unable to perform work duties until further eval. from Pain Management Clinic." (A.R. 215-217.) No return to work date was given. He indicated that plaintiff could sit eight (8) hours a day intermittently and stand and walk two (2) hours a day intermittently. (A.R. 216.) However, plaintiff could not climb, twist/bend/stoop and could work zero (0) hours a day. (A.R. 216.) Plaintiff could lift eleven (11) to twenty (20) pounds occasionally and more than twenty (20) pounds never. (A.R. 216.)

The Attending Physician Statement computed by Dr. Hokanson on May 21, 2002, indicated that the plaintiff was unable to return to work because she was still under treatment. (A.R. 211.) He indicated that the plaintiff could sit, stand, and walk intermittently (no number of hours given) and work zero (0) hours a day. (A.R. 211.) While plaintiff could operate a motor vehicle, she could not climb, twist/bend/stoop or reach above shoulder level. Record 211. Dr. Hokanson stated: "No heavy lifting, bending/stooping or twisting." (A.R. 211.)

Dr. Hokanson's June 26, 2002 Attending Physician Statement indicated that the plaintiff could not return to work because she was still under treatment for chronic back pain. (A.R. 210.) He indicated that plaintiff could sit, stand, and walk intermittently (no hours given) and work zero (0) hours a day. (A.R. 210.) Plaintiff could lift up to ten (10) pounds occasionally and more than ten (10) pounds never. (A.R. 210.) Plaintiff could not climb, twist/bend/stoop or reach above shoulder level, but could

4

operate a motor vehicle. (A.R. 210.) Dr. Hokanson once again stated: "No heavy lifting, bending, stooping or twisting." (A.R. 210.)

Additional records from Dr. Hokanson of McLeod Family Medicine documented continuing problems with deep vein thrombosis in the plaintiff's legs, sciatic radicular pain, depression, and treatment, including nerve blocks and the use of Clonadine, Flexeril, Wellbutrin, and Percocet. (A.R. 156-182.)

Dr. Hokanson referred the plaintiff to several other doctors. In May 2002, plaintiff was referred to Dr. Andrew Rhea for an analysis of her low back pain. Dr. Rhea performed an MRI of the lumbar spine which indicated plaintiff had degenerative disc disease at L4-5 and L5-S1 with no evidence of herniation or stenosis. Dr. Rhea recommended conservative treatment for the plaintiff with "an emphasis on anti-inflammatory agents and physical therapy." (A.R. 125.) Dr. Rhea discharged the plaintiff after his initial visit with her.

Dr. Hokanson referred the plaintiff to McLeod Regional Medical Center's Pain Management Center in May of 2002. Dr. L.R. Perry, an anesthesiologist, performed a facet block and subsequent nerve root blocks on plaintiff to assist with her pain and referred her to physical therapy. (A.R. 134-140.) Three months later Dr. Perry reported, "We have exhausted all intervention on pain therapies for this patient. I recommend that she could try Dr. Joe Carter who may do acupuncture. . . . Unfortunately, we were not able to help this patient with any of her pain syndrome and she will be discharged from the clinic." (A.R. 143.)

Dr. Hokanson then referred the plaintiff to Dr. Jose Santiago, a neurosurgeon. Dr. Santiago's September 25, 2002, examination of the plaintiff revealed "mild degenerative changes at L4-5 and L5-S1 . . . without any significant neural element compression." (A.R. 145.) Dr. Santiago referred the

plaintiff to physical therapist Martha Lair and advised her to take Tylenol for her pain. (A.R. 146.) Dr. Santiago referred the plaintiff back to Dr. Hokanson for further treatment stating that "she does not need neurosurgical treatment." (A.R. 145.)

Plaintiff completed a Personal Profile outlining her daily activities for the defendants. (A.R. 249-257.) Plaintiff indicated that she cleans the kitchen, makes the bed, vacuums, dusts and does laundry, engages in stretching exercises twice a day, and can wash, bathe and dress herself. (A.R. 250, 253.) Plaintiff visits the grocery store once a week. (A.R. 251.) She drives herself to her doctor's appointments and to the drug store. (A.R. 251.) She also takes regular walks and checks her mailbox. (A.R. 251, 253.) Plaintiff's counsel also submitted evidence of plaintiff's receipt of a disability determination, finding her disabled, from the Social Security Administration ("SSA"). (A.R. 151-154.)

MetLife sent plaintiff's file to three doctors to review the medical records submitted by the plaintiff and advise MetLife regarding plaintiff's medical and psychological needs, namely lower back and leg pain, chronic pain and depression, which she contends are disabling. MetLife submits that none of these doctors are employed by MetLife, but are independent practitioners. (A.R. 84-86, 105-107, 193-194.)

Dr. Gary P. Greenhood, Board Certified in Internal Medicine and Infectious Diseases, reviewed the medical records plaintiff had presented to MetLife by December 2002, and he rendered an opinion on December 23, 2002. (A.R. 190-192.) Dr. Greenhood noted that the findings on plaintiff's MRI of the lumbar spine "are typical for what might be seen in any 55 year old patient." (A.R. 191.) Dr. Greenhood stated that, based his review of the records, they lacked the "objectively-abnormal basis upon which to explain pain of this severity" and did not support work-related restrictions. (A.R. 191.)

Dr. Alan P. Carr, Board Certified in Pain Management, reviewed all of the medical records Plaintiff submitted, as well as a job description received from Plaintiff's employer, and rendered an opinion on July 23, 2003. (A.R. 70-74.) Dr. Carr opined that Plaintiff could perform the requirements of a quality technician. (A.R. 75.) Dr. Carr noted that Dr. Rhea found there were no signs of neurological dysfunction and that her motor strength showed no evidence of strength loss. Dr. Carr noted that Dr. Perry also concluded Plaintiff had good strength and normal motor and sensory functions after his May 21, 2002 examination of her: "[m]otor and sensory exam were normal in the upper extremities. Motor exam shows good 5/5 strength in all muscle groups tested in the lower extremities. There were no sensation changes." (A.R. 74.) (*See* Dr. Perry's note Record 133.)

Dr. Saul Forman, a psychiatrist, reviewed all of the medical records submitted by plaintiff and rendered an opinion on July 14, 2003, concluding that the records did not support a diagnosis of depression or any psychological limitations, or a disability from depression and that there was no documentation of a major depression. (A.R. 76-78.) Dr. Forman stated that

> [t]he files do not contain any mental health treatment records or documentation that she has ever undergone mental health care. They also do not find any evaluations in which a mental health evaluation, including a history of, for example, reactive depression or signs and symptoms of depression such as a history of sadness, helplessness, hopelessness, tearfulness, or suicidal ideation and/or a plan.

(A.R. 77.) Dr. Forman further noted, "[i]n that she is able to manage her activities of daily living and has outside interests, she may not meet the American Psychiatric Diagnostic and Statistic Manuel criteria for a reactive depression." (A.R. 78.)

However, plaintiff's records with Dr. Hokanson indicate she was treated for depression with various prescriptions. Dr. Hokanson's records indicate that the plaintiff's depression was treated with

Prozac and Zoloft and when they did not help, he prescribed Paxil. (A.R. 160.) The plaintiff later reported that her depression was not any better and Dr. Hokanson prescribed Welbutrin. (A.R. 167.)

MetLife asked C.B. Camfield, a vocational analyst, to conduct an analysis of the duties of plaintiff's own occupation as an auditor processor. (A.R. 196-198.) Camfield compared jobs from the Dictionary of Occupation Titles ("DOT") to the job description that MetLife had received from Georgia-Pacific, which outlined all of the duties plaintiff performed as audit processor. (A.R. 279-280.) Camfield's opinion, dated November 1, 2002, lists the job duties of plaintiff's occupation and the job duties of an inspector of paper products to support her conclusion that the DOT's definition of inspector of paper products is most closely linked to plaintiff's occupation. (A.R. 196.) Furthermore, Camfield identified positions for inspector of paper products in the area where plaintiff resides. (A.R. 196-197.)

MetLife reviewed the medical records and other documents that plaintiff submitted for an approximate seven (7) month period of time after it informed plaintiff of its initial denial of benefits. MetLife also requested medical records from plaintiff's doctors, although under the plan it is plaintiff's obligation to provide records to MetLife. (A.R. 203-205.) MetLife gave plaintiff an additional thirty (30) days beyond the statutorily required one hundred and eighty (180) days to submit additional medical information. 29 C.F.R. §2560.503-1(h)(i). After MetLife reached its final decision on July 30, 2003, plaintiff attempted to supplement the Record. MetLife considered the records submitted and concluded that they do not support the plaintiff's claim.

**Discussion of the Law**

**Standard of Review**

The parties stipulate that the proper standard of review is an abuse of discretion standard. (Jt. Stip. ¶ 3).[2] Furthermore, the parties stipulate that the Court may dispose of this matter consistent with the submitted joint stipulation, administrative record, and memoranda in support of judgment. (Jt. Stip. ¶ 9).

The abuse of discretion standard applies "where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). Under an abuse of discretion standard, a decision will not be disturbed if it is reasonable, even if the Court disagrees with the ultimate decision. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000). When an administrator is granted discretion by the terms of an ERISA plan

> a court reviews the administrator's decision to deny benefits for an abuse of that discretion, asking whether the denial of benefits was reasonable, *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995) (citations omitted), "based on the facts known to [the administrator] at the time." *Sheppard v. Enoch Pratt Hosp., [Inc.*, 32 F.3d 120,] 125 [(4th Cir. 1994)]. An administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein*, 70 F.3d at 788 (internal quotation marks and citation omitted).

*Stup v. Unum Life Ins. Co. of America*, 390 F.3d 301, 307 (footnote omitted).

---

[2] The pertinent plan document provides:
> The plan administrator has the exclusive responsibility and complete discretionary authority to control the operation and administration of this plan, with all powers necessary to enable it to properly carry out such responsibility, including but not limited to, the power to construe the terms of this plan, to determine status and eligibility for benefits and to resolve all interpretive, equitable and other questions that shall arise in the operation and administration of this plan. It has been delegated to MetLife, the benefit claim processor for the Long-Term Disability Plan, the administrative and interpretative discretion to resolve long-term disability claim denials and appeals under the plan's claim procedures.

(Jt. Stip. ¶ 4; Record 51.)

After reviewing the administrative record and applying the aforementioned standard of review, the Court concludes that MetLife's claims decision in the instant case was not "the result of a deliberate, principled reasoning process," *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997), because it failed to consider an important aspect of Lampley's problems. Furthermore, the Court concludes that MetLife's decision was not based upon "substantial evidence" or, in other words, "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *See LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (*quoting Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

**Scope of the Evidence**

Since the appropriate standard of review in this case is an abuse of discretion, this Court's review is limited to the evidence that was before the claims administrator at the time of the decision. *See Sheppard v. Enoch Pratt Hospital v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994); *see also Bernstein*, 70 F.3d at 788 ("[W]hen a district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision.").

**Analysis**

The question before the Court is whether MetLife abused its discretion in concluding that the plaintiff failed to show she was disabled. Under the Plan, plaintiff is "disabled" and, therefore, entitled to LTD benefits if because of sickness, pregnancy or accidental injury she is: "receiving appropriate care and treatment from a doctor on a continuing basis;" and (1) "During the first 24 months following your elimination period, you are unable to earn more than 80% of your predisability earnings at your own occupation for any employer in your local economy, or" (2) "After the first 24 month period, you are

unable to earn more than 80% of your indexed predisability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience, and predisability earnings." (A.R. 40 (emphasis added).)[3]

A participant's entitlement to an "award of benefits under an ERISA plan is governed in the first instance by the language of the plan itself." *S.S. Trade Ass'n Int'l Longshoreman's Ass'n v. Bowman*, 247 F.3d 181, 183 (4th Cir. 2001). In other words, the written language of an employee benefit plan determines an employee's entitlement to benefits and the amount of those benefits. *See Dameron v. Sinai Hospital Baltimore, Inc.*, 815 F.2d 975, 978 (4th Cir. 1987); *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116 (4th Cir. 1989). As claims fiduciary for the plans, MetLife is obligated to plan participants to follow the written terms and conditions of the plans in reviewing disability claims. *See* 29 U.S.C. § 1104(a)(1)(D); *Pegram v. Herdich*, 530 U.S. 211, 223-24 (2000).

The LTD plan places the responsibility on the employee seeking benefits to offer proof to MetLife that the employee is disabled as defined by that plan. The parties have stipulated that the pertinent definition of "disability" is:

> Due to sickness, pregnancy or accidental injury, you are receiving appropriate care and treatment from a doctor on a continuing basis and:
>
> During the first 24 months following your elimination period, you are unable to earn more than 80% of your predisability earnings or indexed predisability earnings at your **own occupation** for any employer in your local economy, or
>
> After the first 24 month period, you are unable to earn more than 80% of your indexed predisability earnings from any employer in your local economy at **any gainful occupation** for which you are reasonably qualified taking into account your training, education, experience, and predisability earnings

---

[3] The parties have indicated that only part one of the disability definition applies to the issues in this case.

(A.R. 40 (emphasis added).)  In the instant case, MetLife determined plaintiff failed to provide sufficient evidence of disability.

The express terms of the Plan tie the definition of disability to the employee's functional capacity, i.e., the ability to perform the essential functions of her "own occupation."  The Plan does not tie the definition of disability to some medical impairment, social security or medical definition. Plaintiff is required to provide proof of disability from engaging in her own occupation.  Because plaintiff contends she is disabled from lower leg and back pain, chronic pain and depression, the Plan's terms require her to present proof that she is "receiving appropriate care and treatment" from doctors who customarily treat the type of illnesses about which Plaintiff complains and that she is unable to earn more than 80% of her predisability earnings at her own occupation for any employer in the local economy.

The defendants denied the plaintiff's claim for LTD benefits on the basis that they had no medical records from plaintiff to rely on in awarding LTD benefits and based on the independent medical opinions they obtained.  Given the broad discretion under the LTD Plan, the sole question presented to the Court is whether, taking the evidence before MetLife at the time it made its claims decision, MetLife had an unreasonable basis for concluding that the plaintiff failed to show she was disabled.

While plaintiff's treating physician may not specifically use the term the plaintiff is "disabled" he does clearly state, several times in the record, that the plaintiff cannot return to work.  He additionally lays out the plaintiff's physical limitations.

Defendants argue that they received independent medical opinions that support their decision to deny the plaintiff LTD benefits.  Initially, the Court notes that none of these doctors met with,

12

examined, or treated the plaintiff. Their opinions are based solely on their review of the medical records provided to them by the defendants. As discussed above, defendants hired Drs. Greenhood and Carr to review the plaintiff's medical records. Dr. Greenhood reviewed plaintiff's medical records in December of 2002 and noted that the findings from plaintiff's MRI "are typical for what might be seen in any 55 year old patient." (A.R. 191.) Dr. Greenhood concluded that, based on his review of the records, they lacked the "objectively-abnormal basis upon which to explain pain of this severity." (A.R. 191.) However, Dr. Greenwood did not have a job description. This Court fails to understand how Dr. Greenwood's opinion, that he was unable to support work-related restrictions, can be used to support the decision that the plaintiff cannot perform her own occupation when he did not know the physical demands of the petitioner's job. In such a situation, the Court finds that it was unreasonable for the defendants to rely on the opinion of Dr. Greenwood to support their disability determination.

Dr. Carr reviewed the plaintiff's medical records as well as a job description presented by the defendants. Dr. Carr opined that the plaintiff could perform the requirements of her job. Interestingly, Dr. Carr did not have the physical requirements for plaintiff's job. In fact, he stated in his report that the job description "does not mention any physical capacity requirements of that job" and that it "does not appear to be any type of heavy labor." (A.R. 74.) However, the job description located in the Record at pages 283-284, indicates the following physical requirements:

| JOB DEMAND | EXTENT | FURTHER INFORMATION |
| --- | --- | --- |
| STANDING | Continuous | Monitor/testing production |
| WALKING | Continuous | Monitor/testing production |
| CLIMBING | Seldom | Cross conveyor/platform |
| BENDING | Continuous | Monitor/testing production |

13

| CROUCHING | Seldom | Monitor/testing production |
|---|---|---|
| PUSHING-PULLING | Continuous | Monitor/testing production |
| CARRYING | Continuous | Tubes of cups |
| REACHING ABOVE | Seldom | Catching of cups |
| LIFTING-LOWERING | | Stacks of boxes |
| 1-15 LBS. | Intermittent | Handling case of cups |
| 15-30 LBS. | Intermittent | Handling case of cups |
| 30+ LBS. | Intermittent | Handling case of cups |
| REPETITIVE MOTION | | |
| HAND-WRIST | Continuous | Monitor/testing production |
| ELBOW-SHOULDER | Continuous | Monitor/testing production |
| WORKING AT HEIGHTS | Seldom | |
| SITTING | Seldom | Paper/computer work |

Dr. Carr clearly did not take into consideration the physical requirements of the plaintiff's job in determining that she could perform the requirements of her job. In the Court's opinion, it was unreasonable for MetLife to rely on Dr. Carr's opinion when it did not consider the physical demands of the plaintiff's job and her physical limitations.

There is absolutely no indication in the record before the court that MetLife ever considered Lampley's physical limitations in evaluating whether she was disabled from performing her own occupation. Clearly Lampley's occupation has physical demands. If an employee can sit, stand, and walk only intermittently, lift up to ten (10) pounds only occasionally, and more than ten pounds never, then one must wonder whether that individual could continuously stand, walk, bend, push-pull, and carry and intermittently lift thirty pounds (30) or more, which is what plaintiff's "own occupation" requires. It seems to the Court reasonable that in calculating whether one could work at such an

occupation that it would be only logical to consider an individual's physical limitations and the physical requirements of the job. However, it is apparent that MetLife nor the doctors it hired to review plaintiff's medical records took into consideration her ability to perform her own occupation.

The Court's opinion that the defendants' decision to deny LTD benefits was an abuse of discretion does not involve an application of the treating physician rule. This Court recognizes that the Fourth Circuit has routinely held that an administrator does not abuse its discretion in denying a claimant's LTD claim when the administrator chooses the medical evidence of its doctor over the conflicting medical evidence offered by the claimant. *Palmer v. Prudential Ins Co.*, 215 F.3d 1320 (4th Cir. 2000). However, in the instant case, the experts defendants rely on did not have the information necessary through a deliberate, reasoned process to determine whether plaintiff was disabled under the own occupation definition in the Plan. As such, it was unreasonable for MetLife to rely on their opinions in denying LTD benefits.

Not one of defendants' expert physicians reviewed, must less considered, the actual physical requirements associated with the plaintiff's "own occupation." The VE is not a physician and merely expressed an opinion as to the availability of other similar jobs in the area. He expressed no opinion as to the plaintiff's physical ability to perform her "own occupation."

The defendant argues that it relies on an analysis of the DOT job titles of plaintiff's duties to arrive at the conclusion that plaintiff's job was light duty and that, consequently, she could find a job within her "own occupation" with another employer that would not include the necessary physical demands of her job for Georgia Pacific. The Fourth Circuit has held that an administrator can rely on the DOT. *See Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264 (4th Cir. 2002). While a general job description of the DOT need not necessarily include every duty to be applicable, it must

include comparable duties. *Galagher*, 305 F.3d at 272. In *Gallagher*, the Court allowed the defendant to use a DOT job description because the job description available was insufficient to establish the demands of the plaintiff's job. However, in this case, it is undisputed that there is an adequate job description laying out the physical demands of the plaintiff's job and the DOT job description relied on by Camfield does not include the same physical demands. *See* A.R. 283-284. The job description relied on by the defendants fails to consider the physical demands of the plaintiff's job, which are crucial to the performance of the position and of which there are many. Additionally, even the physical demands of the job description for inspector, paper products given by the VE included the following physical demands: lifting, carrying, pushing, pulling twenty (20) pounds occasionally, frequently up to ten (10) pounds, or negligible amount constantly; walking or standing frequently; pushing and/or pulling of arm or leg controls; frequently required to reach, handle, finger; and occasionally stooping. The physical demand of inspector, paper product, which the DOT classifies as "light duty," would require the plaintiff to do more than she is physically able according to her treating physician. Dr. Hokanson, plaintiff's treating physician, specifically stated that she could lift up to ten (10) pounds only occasionally and could sit, stand and walk only intermittently and that she cannot return to work. Defendants' experts fail to address plaintiff's specific physical limitations in relation to the actual physical requirements of her job.

Plaintiff attempts to bolster her case that she is disabled by submitting that she has been determined to be disabled and is currently receiving disability benefits from the SSA. The United States Supreme Court and the Fourth Circuit have held that an ERISA fiduciary is not bound by the SSA's decisions. *The Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) (plan administrators are not obliged to accord special deference to the opinions of treating physicians); *Elliott v. Sara Lee Corp*.,

190 F.3d 601 (4th Cir. 1999) ("Social Security Administration's determination that plaintiff was disabled did not address issue of 'total disability' because definition of 'total disability' under benefit plan did not mirror relevant definition under SSA regulations"). This Court believes that it need not discuss plaintiff's social security disability under the circumstances because the defendants' decision to deny benefits was not supported by substantial evidence and this Court finds it to have been reasonable.

## Conclusion

Based on the evidence before MetLife, the Court concludes that Met Life had no reasonable basis for finding that plaintiff was not disabled. The Court finds that MetLife abused its discretion and, accordingly, plaintiff is entitled to judgment in this case. It is therefore **ORDERED** that Plaintiff is granted judgment in their favor and the Plan Administrator shall calculate and pay the benefits due the plaintiff under the terms of the plan. Additionally, since the plaintiff has also requested attorney's fees and costs as allowed by statute, it is further **ORDERED** that the parties shall submit to the Court any motions, briefs, and/or affidavits regarding the issue of attorney's fees and costs within ten (10) days of this Order.

**IT IS SO ORDERED**.

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

September 7, 2005
Florence, SC